James H. Fisher, Administrator, etc., Respondent, *v.* The New York Central and Hudson River Railroad Company, Appellant.

The B. and N. F. R. R. Co. and the B. and L. R. R. Co., both of whose lines run through the village of Tonawanda to the city of Buffalo, entered into an agreement, by which the right of way on the line adopted by the B. and L. R. R. Co. was to be procured, and the grading, etc., to be done at joint expense, each company to lay one track at its own expense. The B. and L. R. R. Co. was engaged in constructing its track, when it was consolidated with other companies into the N. Y. C. R. R. Co., which latter company completed the track and ran its trains over it from Lockport to Buffalo. The B. and N. F. R. R. Co. never laid any track upon the line acquired under the agreement. The N. Y. C. R. R. Co. entered into an agreement with the B. and N. F. R. R. Co., by the terms of which it acquired the right to use the road, property and franchises of the latter during its corporate existence. By its charter the latter company was authorized to charge four cents a mile for transporting passengers. Subsequently under the provisions of chapter 302, Laws of 1855, the N. Y. C. R. R. Co. acquired all the stock of the B. and N. F. R. R. Co., and filed the required certificate with the Secretary of State.— *Held,* that the contract between the N. Y. C. and the B. and N. F. R. R. Cos. was valid. By it the former became the lessee of the latter within the meaning of the statute of 1855, and by a compliance with the provisions of that statute, became vested with all the property and franchises of the latter, including the right to charge four cents a mile over its track, but that this right did not extend to the track constructed by the B. and L. R. R. Co., or by the N. Y. C. R. R. Co., its successor.

Under the provisions of the act of 1857, to prevent extortion by railroad companies (chap. 185, Laws of 1857), only one penalty of fifty dollars,

together with the excess of fare, can be recovered for all acts committed prior to the commencement of the action.   The forfeiture is not given as a satisfaction for the injury received.   That is fully satisfied by a return of the sum extorted with interest; but it is given to compensate the party injured for his expenses in the prosecution, and to compel the payment of such a sum by the company violating the law as would effectually stop the practice.

A recovery can be had under this act by a party who has paid the excessive fare when riding, simply for the purpose of obtaining the penalty. (Peck-ham, J., dissenting.)

(Argued December 6, 1871; decided December 12, 1871.)

Appeal from judgment of the General Term of the Superior Court of Buffalo, affirming a judgment in favor of plaintiff, entered upon a decision of the court at Trial Term.

This action is brought to recover penalties alleged to have been incurred by defendant, under the provisions of chapter 145, Laws of 1857, in asking and receiving a greater rate of fare than allowed by law from the plaintiff's intestate.

Under an act of the legislature of this State, passed May 3, 1834 (Laws of 1834, chap. 269, page 472), the Buffalo and Niagara Falls Railroad Company was incorporated, with power to construct, maintain and operate a railroad from Buffalo to Niagara Falls, through the village of Tonawanda, and to ask and receive not to exceed four cents a mile for the carriage of any passenger.

That corporation constructed a railroad accordingly, laying its track almost entirely in the public highways and streets, and operated it until December, 1853.

In 1852 the Buffalo and Lockport Railroad Company was incorporated, under the general railroad act, with power to construct, maintain and operate a railroad between Buffalo and Lockport, through the village of Tonawanda.

It located its railroad accordingly, acquired the right of way, and had constructed its road from Lockport to Tonawanda, and had " acquired title to its line of road between Tonawanda and Buffalo, except 2,000 feet, and commenced the construction of its road."

With the exception of 2,000 feet at Tonawanda, the line

of the Buffalo and Lockport Railroad Company's road was entirely new, separate and distinct from that of the Buffalo and Niagara Falls Railroad Company, and those companies' roads had different termini in the city of Buffalo.

On June 7th, 1852, the Buffalo and Lockport Railroad Company entered into a written agreement with the Buffalo and Niagara Falls Railroad Company, by which it was agreed, in substance, that the former company should acquire title in its name to the right of way on its projected line of road, between Tonawanda and Buffalo, the expense of which, and of the erection of depots and the other necessary buildings to be borne jointly by both companies. And it was expressly agreed that each company should pay " the expense of super-structure of one track."

Pursuant to an act of April 2d, 1853, entitled "An act to authorize the consolidation of certain railroad companies" (Laws of 1853, chap. 76, p. 110), the Buffalo and Lockport Railroad Company became, on July 7, 1853, consolidated with all of the other railroad companies mentioned in the first section of that act, under the name of " The New York Central Railroad Company."

On December 22d, 1853, an agreement was entered into between the New York Central Railroad Company, the Buffalo and Niagara Falls Railroad Company and the Lewiston Railroad Company, in and by which the Buffalo and Niagara Falls Railroad Company leased to the New York Central Railroad Company, its entire property and franchises for the full and unexpired term of its corporate existence.

The New York Central Railroad Company completed the construction of the road located by the Buffalo and Lockport Railroad Company, and the erection of its depots, about December 1st, 1854.

So much of the right of way as had been acquired by the Buffalo and Lockport Railroad Company, between Tonawanda and Buffalo, up to December 22d, 1853, was paid for jointly by that company and the Buffalo and Niagara Falls Railroad Company. The New York Central Railroad Com-

pany subsequently acquired the remaining portion of such right of way and took the title thereto, in the name of the Buffalo and Lockport Railroad Company.

But a single track has ever been laid down on the Buffalo and Lockport Railroad Company's road between Buffalo and Tonawanda.

As soon as this track was completed, the New York Central Railroad Company took up and abandoned the track and road of the Buffalo and Niagara Falls Railroad Company between Buffalo and Tonawanda; and since that time all trains of cars run between Buffalo and Tonawanda, whether destined for Lockport or Niagara Falls, have been run over and upon this track.

Subsequent to the passage of the act in relation to railroads held under lease (chapter 302, Laws of 1855), the New York Central Railroad Company took a surrender, or transfer, of all of the capital stock of the Buffalo and Niagara Falls Railroad Company, and on April 23, 1869, filed the certificate, provided for therein, with the Secretary of State.

On November 1st, 1869, under chapter 917, of the Laws of 1869 (vol. 2, page 2,399), the New York Central Railroad Company and the Hudson River Railroad Company were consolidated, and a new corporation created under the name of the New York Central and Hudson River Railroad Company, the defendant in this action.

It is provided by section 3 of that act, that "nothing in this act contained shall allow any rate of fare for way passengers greater than two cents per mile, to be charged or taken over the track or tracks of that railroad now known as the New York Central Railroad Company; and the rate of fare for way passengers over the track or tracks now operated by the said New York Central Railroad Company, shall continue to be two cents per mile and no more, wherever it is now restricted to that rate of fare."

The actual distance from the defendant's depot at Erie street, in Buffalo, to its depot at Tonawanda, does not exceed

ten and a half miles; and from Erie street depot to Lockport does not exceed twenty-six miles.

The legal rate of fare at two cents a mile from Buffalo to Tonawanda is twenty-three cents; and from Buffalo to Lockport, fifty-two cents; while the amount uniformly "asked and received" by the New York Central Railroad Company and by the defendant was, and is, from Buffalo to Tonawanda, thirty-four cents; and from Buffalo to Lockport, sixty-five cents.

During the time alleged in the complaint and up to November 1st, 1869, the New York Central Railroad Company ran two trains daily (Sundays excepted), from Buffalo to Lockport and return, which trains were known as "Buffalo and Lockport trains," and several trains daily between Buffalo and Niagara Falls and return, known as "Buffalo and Niagara Falls trains;" and since November 1st, 1869, the defendant has, in like manner, run trains between those points.

The court found as a fact, "that on the 23d day of April, 1869, all of the franchises and property of the Buffalo and Niagara Falls Railroad Company became vested in the New York Central Railroad Company."

"That from December, 1853, to November, 1869, the New York Central railroad Company and the defendant since then have, in the exercise of the franchises acquired from the Buffalo and Niagara Falls Railroad Company, run its trains between Buffalo and Niagara Falls; and in the exercise of the franchises acquired from the Buffalo and Lockport Railroad Company, under the act of 1853, run its trains between Buffalo and Lockport."

"That the plaintiff took passage as a way passenger on such trains run between Buffalo and Lockport, from Buffalo to Tonawanda, and the defendant asked and received from him, and the plaintiff paid thirty-four cents fare on each of twenty-six different passages."

"And, as matter of law, the court decided that the defendant, on each and every of such occasions asked and received from the plaintiff a greater rate of fare than that allowed by

law, and thereby forfeited fifty dollars upon each and every of said occasions; and that the plaintiff is entitled to recover the same, together with the excess of fare so received by the defendant."

Judgment was accordingly entered for $1,376.48, damages and costs.

*A. P. Lansing*, for appellant. The statute to prevent extortion by railway companies is penal, and must receive a strict construction. (*Sprague* v. *Birdsall*, 2 Cow., 419; *Seward* v. *Beach*, 29 Bar.; *Hasbrook* v. *Paddock*, 1 Bar., 635.) Every material fact must be strictly proved. (*B. and W. P. R. R. Co.* v. *Robbins*, 22 Bar., 662; *Rathbun* v. *Acker*, 18 Bar., 393; *Willard* v. *L. A. and A. R. R. Co.*, 9 How., 238; *McClosky* v. *Cromwell*, 11 N. Y., 593; *Chase* v. *N. Y. C. R. R. Co.*, 26 N. Y., 525.) It is in nature of, and for the purpose of satisfaction for the wrong done. (*Palmer* v. *Conly*, 4 Den., 374; *Sturges* v. *Spofford*, Ct. of Appeals.) The payment of excess of fare was voluntary, passages being taken for the purpose of recovering penalty, and the court will not aid a party in *pari delicto*. (*People* v. *Wholey*, 6 Cow., 661; *Nellis* v. *Clark*, 20 Wend., 32; *Nellis* v. *Clark*, 4 Hill, 426.) The recovery under this statute is limited to fifty dollars and excess of fare paid. (*Washburn* v. *McInay*, 7 J. R., 134; *Tiffany* v. *Driggs*, 13 J. R., 253; *Bigelow* v. *Johnson*, 13 John., 428; *Deo* v. *Reed*, 3 Hill, 527; *People* v. *N. Y. C. R. R. Co.*, 13 N. Y., 78.) Defendant acquired all the rights of franchise of the B. and N. F. R. R. Co. (*Robertson* v. *City of Rockford*, 21 Ill., 457; *Clearwater* v. *Meredeth*, 16 Ind., 172; 1 Wall., 125.)

*G. W. Cothran*, for respondent. Defendant is bound to exercise all its franchises. (*People* v. *A. and V. R. R. Co.*, 22 N. Y., 261.) The two cent limitation of the act of 1853, not repealed by implication by the act of 1855. There must be a total repugnancy to work that result. (*Wood* v. *U. S.*, 16 Peters, 342; *Bower* v. *Lean*, 5 Hill, 225; *Dariess* v.

*Fairburn*, 3 How., 636 ; *McCool* v. *Smith*, 1 Black., 429 ; *Wallace* v. *Bassett*, 41 Barb., 92 ; Dwarris on Stat., 532.) The lease by the B. and N. F. R. R. Co. was void. (2 Kent's Com., 299, and cases cited ; *A. and C. R. R. Co.* v. *Douglas*, 9 N. Y., 444 ; *Curtis* v. *Leavitt*, 15 N. Y., 9, 212 ; *People* v. *U. Ins. Co.*, 15 John., 358 ; *Burns* v. *Ontario Bank*, 19 N. Y., 152, 163 ; *Halstead* v. *Mayor, etc.*, 3 N. Y., 430 ; *S. and B. R.* v. *L. and N. W. R.*, 6 Ho. L. C., 113, 131, 136 ; *Winch* v. *B. L. and C. R.*, 5 De. G. & S., 562 ; *Bernan* v. *Rufford*, 1 Sim. U. S., 550 ; *G. N. R. Co.* v. *E. C. R.*, 9 Hare, 306 ; *E. A. R. Co.* v. *E. C. R. Co.*, 11 C. B., 2 J. Scott, 775 ; *Bissell* v. *M. S. and N. I. R. R. Co.*, 22 N. Y., 258 ; *Johnson* v. *S. and B. R.*, 3 De. G. & M., 914 ; *L. B. and S. C. R.* v. *L. and S. W. R.*, 4 De. G. & J., 362 ; *A. and M. R.* v. *I. and C. R.*, 5 Am. Law Reg., U. S., 733 ; *Troy and R. R. R.* v. *Kerr*, 17 Bar., 581, 601 ; *MacGregor* v. *The O. M. of D. R. R.*, 16 Eng. L. & Eq., 180 ; *Pearce* v. *M. and I. R. Co.*, 21 How., U. S., 441 ; *Langley* v. *B. and M. R. R.*, 10 Gray, 103 ; *Commonwealth* v. *Smith*, 10 Allen, 448 ; *McClure* v. *M. and L. R. R.*, 13 Gray, 124 ; *Susquehanna Coal Co.* v. *Bonham*, 9 W. & S. 27 ; *Arthur* v. *C. and R. Bank*, 9 Sund & M., 394 ; *S. G. R* v. *G. N. R. Co.* 18 Eng. L. & Eq., 512 ; *Simpson* v. *Denison*, 10 Hare, 51.) Plaintiff entitled to recover the fifty dollars forfeiture for each offence. (*Palmer* v. *Conly*, 4 Den., 374 ; 2 N. Y., 182 ; *Deyo* v. *Rood*, 3 Hill, 527 ; *Valland* v. *King*, 3 Barb., 548 ; *Johnson* v. *H. R. R. Co.*, 2 Sweeney, 298 ; 1 Kent's Com., 465 ; *Bove* v. *Booth*, 2 W. Black, 1226 ; *Ward* v. *Snell*, 1 H. Black, 10, 13 ; *Moore* v. *Jones*, 23 Vermt., 735.) Any number of penalties may be counted upon and recovered in the same action. (*Bartolett* v. *Achey*, 38 Penn. St. R., 273 ; *Deyo* v. *Rood*, 3 Hill, 527 ; *City of Brooklyn* v. *Cleves*, Lalor's Sup. to H. & Den., 231 ; *Gibson* v. *Sault*, 33 Penn. St. R., 44 ; *People* v. *New York Central R. R. Co.*, 25 Barb., 199, S. C., affirmed in Court of Appeals ; 13 N. Y., 78 ; *Hill* v. *Herbert*, N. J., 924 ; *Barkhamsted* v. *Parsons*, 3 Conn. ; *Dallas* v. *Hendry*, 2 Penn., N. J. (973), 707 ; *Peo-*

*ple* v. *McFadden*, 13 Wend., 396 ; *City of Brooklyn* v. *Tonybee*, 31 Barb., 282 ; *Howland* v. *Bothmar*, 4 T. R., 228 ; *Young* v. *The King*, 3 T. R., 98 ; *Foster's Case*, 11 Coke, 56 ; *Parker* v. *Sir J. Curson*, Cro. Jac., 529 ; *Dorner* v. *Smith*, Cro. Eliz, 835 ; Espinasse Penal Statutes, 123, 145, 146 ; 1 Cow. Treatise, 2d ed., 561 ; *Johnson* v. *Hudson River R. R. Co.*, 2 Sweeney, 298 ; *Vallance* v. *King*, 3 Barb., 548 ; *Langdon* v. *The Fire Department of New York*, 17 Wend., 234 ; *Chicago and Alton R. R. Co.* v. *Howard*, 38 Ill. R., 414 ; *Young* v. *The King*, 3 T. R., 98 ; *Howland* v. *Bothmar*, 4 T. R., 228 ; *Kane* v. *The People*, 8 Wend., 235 ; 2 Archibald Crim. Plead (Banks & Bro., 7th ed.), 92 Marg.) The only question is, did defendant violate the law ? If so, it must suffer the consequence. (*Commonwealth* v. *Hallelo*, 103 Mass., 452 ; *Detely* v. *Yeoman*, 39 Miss., 475.) The fact that plaintiff traveled to recover the penalty, is no defence. (*Com. of Excise* v. *Backus*, 29 How., 33 ; *Tracy* v. *Talmadge*, 14 N. Y., 162 ; *Mount* v. *Waite*, 7 John., 434 ; *Meech* v. *Stone*, 19 N. Y., 26.)

GROVER, J.   In 1852, the Buffalo and Lockport Railroad Company became a corporation under the provisions of the general railroad law, for the purpose of constructing and operating a railroad for the transportation of persons and property between these places, which road should pass through the village of Tonawanda, a place situate ten and a-half miles north of Buffalo.

The corporation commenced the construction of its road, and had completed the same from Lockport to Tonawanda, and under a contract with the Buffalo and Niagara Falls Railroad Company, was engaged in the construction of a track for its use between Tonawanda and Buffalo, on the 7th of July, 1853, when it became consolidated with certain other companies, pursuant to the act of April 2d, 1853, into a new corporation, under the name of the New York Central Railroad Company. At the time of this consolidation, and for some time previous thereto, the Buffalo and Niagara Falls

company were operating a railroad between the city of Buffalo and the village of Tonawanda, the latter being a station on its road from Buffalo to Niagara Falls. After the consolidation, the New York Central Company completed the track from Tonawanda to Buffalo, over which it ran trains from Lockport to Buffalo. These facts show clearly that that part of the road between Tonawanda and Buffalo was subject to the seventh section of the consolidation act, which provides that when two or more of the railroad companies named in the act become consolidated under its provisions, said consolidated company shall carry way passengers on its road at a rate not exceeding two cents per mile, unless relieved therefrom by the facts hereafter stated :

On the 7th of June, 1852, the Buffalo and Lockport, and the Buffalo and Niagara Falls companies entered into an agreement, by which the right of way on the line adopted by the Buffalo and Lockport company (substantially between Tonawanda and Buffalo) was to be procured at the joint expense of both companies, to be held and enjoyed by both companies jointly, for their joint and separate business, and that the grading, masonry and bridges were to be constructed at the joint expense of both companies, such grading, etc., to be of sufficient width for two tracks, said companies each to pay for itself the expense of the superstruction of one track. This plainly contemplated that while the right of way was to be acquired at the joint expense of both companies, and the expense of grading, etc., paid in like manner, yet each company was to lay its own track thereon at its own expense, if it chose to avail itself of its right so to do. The Buffalo and Niagara Falls Company never laid any track upon the line acquired under this agreement. On the 23d day of December, 1853, the New York Central Company entered into an agreement with the Buffalo and Niagara Falls Company by which (if valid) the former acquired from the latter the right to use the road and property connected therewith, and its franchises during the existence of the latter corporation. The validity of this contract is claimed by vir-

tue of the act authorizing railroad companies to contract
with each other. (Laws of 1839, 195.) That act contains
but a single section, providing that it shall be lawful
hereafter, for any railroad corporation to contract with any
other railroad corporation, for the use of their respective
roads, and thereafter to use the same in such manner as may
be prescribed in such contract, but that nothing in the act
contained shall authorize the road of any railroad corporation
to be used in a manner inconsistent with the provisions of
the charter of the corporation, whose railroad is to be used
under such contract. I think the contract made was within
the powers conferred by this act, and therefore valid, and
that under this contract the Central Company, acquired the
right to run cars upon the road theretofore in use by the
Niagara Falls Company, under the franchise of the latter
company, which authorizes a charge of four cents a mile for
transporting passengers, irrespective of the question whether
such passengers were way or through, but the plaintiff was
not carried upon any such road, but upon the track con-
structed by the Buffalo and Lockport Company, or its suc-
cessor, the New York Central. In 1855, an act was passed
(Laws of 1855, 517), providing that any railroad corporation
then being the lessee of the road of any other railroad cor-
poration, might acquire the stock of such corporation in the
manner therein provided, and that when it had so acquired
the majority of such stock, its directors might, by resolution,
to be entered on their minutes, become *ex officio*, the direc-
tors of the corporation whose road was held under lease, and
further providing, that when the whole stock had been so
acquired, the estate property, rights, privileges, and franchises
of the said corporation, whose stock had been thus acquired,
should thereupon vest in, and be held, and enjoyed by the
corporation so acquiring such stock, as fully and entirely, and
without change or diminution, as the same were before held
and enjoyed, and be managed and controlled by the board of
directors of the said corporation which has so acquired such
stock, and in the corporate name of such corporation. There

can be no doubt but that the New York Central was the lessee of the Buffalo and Niagara Falls road, within the meaning of this statute. The case shows that the New York Central company, after the passage of this act, and before April 23d, 1869, acquired in the manner therein provided, all the stock of the Buffalo and Niagara Falls Railroad Company, and on that day filed the requisite certificate in the office of the Secretary of State, and thereby become invested with all the property and franchises of that company. From these facts the defendant claims the right to charge for the carriage of passengers between Buffalo and Tonawanda four cents per mile. If right in this, the judgment for the plaintiff should be wholly reversed, as the sum charged the plaintiff was less than this amount. The argument of the defendant is this : The Buffalo and Niagara Falls Railroad Company had the franchise of carrying persons by rail from Buffalo to Tonawanda, and to charge and receive therefor four cents per mile. That by compliance with the provisions of the act of 1855, it has acquired all the franchises of that company, in as full and ample a manner as such franchises were enjoyed by it. That, therefore, the defendant has the right to carry passengers by rail between those points, and charge the like sum per mile therefor. It is this view that induced the defendant upon the evidence of its counsel to fix the fare between those points at a greater rate than two cents per mile. But this entirely overlooks the fact, that the Buffalo and Niagara Falls Company never had the right to transport passengers upon the track of the defendant, and charge therefor more than two cents per mile, and never could have acquired any such right. The act of 1839 expressly prohibits the lessee of any railroad from exercising any franchise, upon the road leased, inconsistent with the charter of the lessor. Had the Buffalo and Niagara Falls road leased from the New York Central its road between Tonawanda and Buffalo, and the franchise connected therewith, it would have been obliged to carry passengers thereon for two cents per mile, for the reason that

a greater charge would have been inconsistent with the charter of the New York Central.

It is upon this track the plaintiff was carried by the defendant. Upon this track the defendant was, before and at the time it acquired the property and franchises of the Buffalo and Niagara Falls Railroad Company, obliged to carry passengers for two cents a mile. It was not relieved from its obligation so to carry them, by acquiring the franchise of the Buffalo and Niagara Falls Company to carry upon another track between the same points, and charge therefor a higher rate per mile. Whether there is, or has been since the removal of the old Buffalo and Niagara Falls road by the defendant, any track in existence between Buffalo and Tonawanda, upon which the defendant can charge more than two cents per mile, although the passenger may be going to Niagara Falls as held by the General Term, is a question of grave doubt, but one not necessary to decide in the present case. It follows that the plaintiff was entitled to judgment under the act to prevent extortion by railroad companies. (Laws of 1857, 432.) That act (section 1) provides, that any railroad company which shall ask and receive a greater rate of fare than that allowed by law, shall forfeit fifty dollars, which sum may be recovered, together with the excess so received, by the party paying the same; but that it shall be lawful, and not construed as extortion, for any railroad company, to take the legal rate of fare for one mile for any fractional distance less than a mile. The defendant insists that but one penalty can be recovered in the action. First, for the reason, that by the fair construction of the act, no person can acquire a right to recover more, for any and all violations previous to the commencement of the action. Second, that but one penalty can be recovered in an action, in the absence of a statute conferring the right to recover more.

It is clear that the excess exacted, if not voluntarily paid, could be recovered without the statute. That provides, also, for its recovery, and, doubtless, the whole amount of excess, paid by any person to the company within the period fixed

by the statute of limitations, may be recovered in one action. The question arises upon the fifty dollars, which the statute provides that the company shall forfeit by asking and receiving a greater rate of fare that that allowed by law, which sum may be recovered, together with the excess so received, by the party paying the same. How recovered? The law answers, by suit in any court having jurisdiction. What may be¹ recovered? The statute answers, the fifty dollars forfeited, which sum, together with the excess paid. It is clear that the letter of the statute authorizes the recovery of nothing more.

The counsel for the respondent insists that, as soon as the excess of fare was charged and received, the right of action, by the person paying it, for its recovery, and also of the sum of fifty dollars, forfeited, was perfect.

In this the counsel is correct. He further insists that it follows, that a repetition of the act by the defendant, gives him an additional right of the same character; but that is quite a different question, which must be determined by the construction of the statute. In this connection the counsel cites *Palmer* v. *Conly* (4 Denio, 374). That was an action against several persons, to recover the penalty given by section 17, 2 Revised Statutes, p. 503, for knowingly assisting the plaintiff's tenant to remove his goods from the demised premises, having rent due thereon, for the purpose of avoiding the payment of the rent; and the question was, whether the statute abolishing distress for rent, passed during the pendency of the action, was a bar to its further prosecution. Held, that it was not, for the plain reason that the statute abolishing distress for rent, although rendering the section, giving the penalty, inoperative for the future, because no case could occur rendering its violation possible, yet it did not repeal the section. It is from the opinion in this case, and of that of the learned judge when the same case was before this court upon appeal (2 Comst., 182), that the counsel cites, to show that the right to the penalty was one vested in the plaintiff. That this is not true, in the sense insisted upon by the counsel, is shown

by the fact that the right would be destroyed by a repeal of the statute giving the penalty, as is shown by note *b* of the reporter, at page 377. A further question arose, which was, whether, several persons having been concerned in the removal, a several penalty had been incurred by each, or a single penalty, which might be recovered severally against any one or against all jointly. The court held that but a single penalty had been incurred, although the language of the statute was " every person," etc., apparently making each liable to a several penalty, upon the ground that such was the apparent intent, for the reasons that the offence was single, and given to the plaintiff in satisfaction of the injury received by him. It is insisted by the counsel that this forfeiture is given to the party as a satisfaction for the injury received. But that injury is fully satisfied, in judgment of law, by returning to the party the sum extorted, with interest thereon. That is the satisfaction given for such an injury by the common-law, in the absence of any statute; and when, in such cases, punitory damages, sometimes called smart-money, are given, it is not to compensate the plaintiff for his injury, but to punish the defendant for his misconduct. A little reflection will show, I think, what the forfeiture was given for. Until 1855, so far as I am aware, no statute had been passed upon this subject. Experience had shown that railroad corporations were charging fares beyond the rate allowed by law; that these charges were very small in each particular case, but, aggregated for a year, amounted to a sum sufficient to continue the practice. The sums so extorted were always small in any one case, usually but a few cents, sometimes shillings, and the trouble and expense of prosecuting for their recovery in justices' courts were more than the amount received from any one person. Thus the illegal practice was continued with impunity.

To remedy this, the statute was passed giving the fifty dollars to the party paying the money, not as a satisfaction for the injury received, for that was otherwise compensated; but to enable him to prosecute in a court of record, when

he could recover the compensation of his attorney as costs, and to compensate for any further expense that might be incurred in the suit, and to compel the payment of such a sum by the defendant as would effectually stop the practice. To effectuate this intent, the language of the statute was chosen with care; which sum, etc., may be recovered, omiting the words, " for each and every offence," found in various penal statutes, showing clearly that the legislature did not intend to open a door to a practice adopted in a case originating in another part of the State, now under advisement in this court, of opening a book account of penalties earned, and delaying suit for a year, when such penalties amounted to between $20,000 and $30,000. A construction permitting this would defeat the intention of the legislature, which was to suppress the extortion by prompt prosecutions, by enabling parties to forbear suing until the aggregate of penalties amounted to a large sum, and induce others to do as one of the plaintiffs in one of the cases now in judgment was honest enough to testify he did; that was to abandon other business and spend his time for a considerable period in riding back and forth from Tonawanda to Buffalo for the purpose of earning penalties. This answers the suggestion of counsel, that if but one penalty can be recovered in this case, a party can be convicted but of one crime, though guilty of several, by showing from the language used, construed in the light of the facts known to the legislature, that it was the design of the statute, that but one forfeiture should be recovered for all acts committed prior to the commencement of the action. The counsel cites *Deyo* v. *Rood* (3 Hill, 527), which was an action for the recovery of penalties incurred by violations of the excise act, by selling strong or spirituous liquors without a license. The language of the statute is, whoever shall sell strong or spirituous liquors, etc., without having a license, etc., shall forfeit twenty-five dollars. Held, that a penalty was incurred by each sale, and that all incurred might be recovered in one suit; but a subsequent section of the same act provided, that the penalties given by the act

might be recovered by the overseers of the poor; thus show-
ing that the legislature designed to impose a penalty and
provide for its recovery for every offence. See *Washburn* v.
*McInroy* (7 J. R., 134), where it was held, in a similar action,
that under the statute, as then in force, but one penalty could
be recovered, for the reason that from the entire act such
appeared to be the intention of the law maker.  These cases,
and *Bones* v. *Booth* (2 Wm. Blackstone, 1226), *Ward* v. *Snell*
(1 H. Blackstone, 10), and other cases and authorities cited
by counsel, show that the statute in question is to be fairly
construed, whether regarded as penal, or remedial so as to
carry into effect the intention of the makers, apparent from
the language used. (See, also, *Chapman* v. *Chapman*, 1
Root, 52; *Barber* v. *Eno*, 2 Root, 150; *Garett* v. *Messenger*,
2 Law Reports, Eng. Com. Pleas, 583; *Tiffany* v. *Driggs*, 13
J. R., 253; *Sturgess* v. *Spoffard*, decided by this court, not
reported.)

My conclusion is, that but one penalty can be recovered
upon the statute under consideration, for all acts committed
prior to the commencement of the action.  If, after this, it is
again violated, another may be recovered in another action
commenced thereafter, and so on, as long as violations con-
tinue.  This will not only tend to put a stop at once to the
extortion, when it is committed knowingly by the defendant,
but where it is done under a mistake as to its rights, will give
it notice that its right to charge the amount claimed is chal-
lenged, and will induce a cautious examination of the ques-
tion, and an abandonment of the claim before a ruinous
amount of penalties have been incurred.  The idea that a
liability to a penalty of fifty dollars with costs of suit will be
insufficient to restrain railroad corporations, is too evidently
groundless to require consideration; but even if sound, the
legislature, and not the courts, must apply the remedy.  This
makes it unnecessary to determine, whether if several penal-
ties are recoverable, they can all be recovered in one action,
or whether a separate action must be brought for each pen-
alty.  I dismiss this part of the case with the simple remark

that irrespective of what was the early common-law rule, or how the question as an original one should be determined upon principle, the rule has been too long considered, settled and acted upon in this State, that they can all be recovered in one action, to permit any departure from it by this court. A point was made by the counsel for the appellant, that a recovery could not be had by a party who paid the excessive fare, when riding for the purpose of obtaining a penalty. In this I cannot concur. The forfeiture is imposed upon the company for its act, and this entirely irrespective of the object or motive of the passenger in traveling.

This leads to a modification of all the judgments, by reducing the recovery in each case to one penalty and the excess paid. This makes the question of costs discretionary with the court. While the general rule is, that when it is found that the judgment is materially erroneous to the prejudice of the appellant, for the correction of which he is obliged to come into this court, to charge the respondent with costs of this court, yet I think they should not be so charged in these cases. The character of the litigation leads me to the conclusion that neither party should recover the costs of this court against the other.

Ch. J., ALLEN and FOLGER, JJ., concur.

PECKHAM, J., dissents from so much of the opinion and decision, as allows a party buying tickets for the purpose of suing for a penalty, to recover.

RAPALLO, J., not voting; being interested in the question as counsel.

Judgment accordingly.