IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# WESTERN DIVISION,

JACKSON, . . . . . . . . . . . . APRIL TERM, 1884

GEO. N. PARKS *v.* NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY.

PLEADINGS AND PRACTICE. *Recovery of penalties.* Under the act of 1865, ch. 15 (Rev. Code, sec. 4927, *b, c, d*), which makes a railroad company liable to forfeit and pay a penalty of $100, upon a failure of the company, during any one trip of the passenger cars, to announce the stopping place or station at which the train stops, only one penalty can be recovered up to the bringing of the suit.

### FROM OBION.

Appeal in error from the Circuit Court of Obion county. C. ADEN, J.

MATT. NEIL, W. C. CALDWELL and JO. R. HAWKINS, Jr., for Parks.

A. W. CAMPBELL for Railroad Company.

COOPER, J., delivered the opinion of the court.

Action for the recovery of penalties under a statute. The circuit judge sustained the demurrer to the declaration. The Referees report that the judgment should be reversed upon the ground that the plaintiff is entitled to recover in full as claimed. The exceptions open the case.

The act of 1865, ch. 15, sec. 2 (Rev. Code, sec. 4927 *b*), provides as follows: "It shall be the duty of each conductor or other employee on any railroad in this State to announce in loud, distinct words, for each passenger car, the stopping place, station, depot or town at which each car or passenger train stops, or shall be detained for any purpose, and also the time such car, or passenger train will stop or be detained."

The next section is: "Every railroad company shall cause such passenger car to be well supplied with pure and wholesome water, and in cool weather have each passenger car provided with comfortable fires, and at night furnished with sufficient light for the use, comfort and convenience of the passengers."

The next section is: "Upon failure of any railroad company, during any trip of the passenger cars, to comply strictly with any of the provisions of the preceding sections of this act, then such railroad company shall forfeit and pay the sum of one hundred dollars, recoverable before any court having jurisdiction thereof, one-half to be paid to the person suing, and the other half to go to the common school fund of the State."

The action was brought by George N. Parks against

the Nashville, Chattanooga & St. Louis Railway to re-
cover penalties alleged to have been incurred under
the foregoing act, for the failure of the conductor or
other employee of the company to announce, on its
passenger trains, at the Paducah junction, a stopping
place of such trains, the station and the time the train
would stop or be detained. The declaration contained
240 counts, each for a separate penalty for a distinct
failure of duty. The defendant demurred to the decla-
ration, assigning as causes of demurrer, first, that the
penalty sued for was unconstitutional, and, secondly,
that the individual conductor or employee, upon whom
the duty of performance was imposed by law, could
alone be held responsible for the penalty, a corpora-
tion aggregate being incapable of incurring the penalty,
or being sued therefor.

Although the first section of the statute quoted
above imposes the duty specified by it upon the "con-
ductor or other employee," while the next section
imposes the duties specified therein upon the railroad
company, yet the intention of the Legislature was to
require certain acts to be done for the comfort and
accommodation of passengers on railroad trains, and to
secure their performance by a penalty for the failure,
to be sued for by any person aggrieved certainly, and,
perhaps, by a common informer. The regulations pre-
scribed are within the police power of the Legislature,
and the mode adopted for their enforcement is one
well known to the common law, and frequently occur-
ring in our statutes. It is true, the penalty is usually
imposed upon the person who is required to perform

the duty, and whose delinquency gives the right of action. Corporations aggregate can only act through agents, and can only be subjected to the police power of the State in this mode by being made responsible for the default of their servants. Perhaps, there can be no reasonable doubt of the liability of a corporation or superior in such cases, where the legislation is remedial, not punitive, although the subject is left in much obscurity by the authorities. The case before us may be decided upon well recognized principles.

All the authorities agree that statutes like the one under consideration must be construed strictly. They further agree that a master or principal may be made liable for a reasonable penalty for the act or omission of an employee or agent in the line of his duty, where the penalty is remedial, not punitive. The inclination of the courts is, therefore, to construe such statutes as remedial, that is as intended to redress an actual injury with a view to prevent its recurrence, and not as punitive, that is, as intended to punish whether the injury has accrued or not. It is in the latter class of cases that the gravest doubts have been entertained whether the principal could be made liable at all to a penalty for the act or omission of the agent or employee: *Dickinson* v. *Fletcher,* L. R., 9 C. P., 1; *McCown* v. *New York Central Railroad Company,* 50 N. Y., 176.

The intent of the Legislature in the statute before us was to secure certain benefits to passengers on the railroad trains. It was, of course, never intended that a penalty should be incurred if in fact there were no

passengers on the train, or in a car of the train in which there was a default. And a failure to call a station at which no passenger intended to get off, or did in fact get off could do no harm, and would be at most only a technical breach of the law. If the statute be construed literally, or as punitive, there would be a penalty even in such cases. Penalties would also be incurred by acts of inadvertence or omissions of negligence although no person was aggrieved thereby. And if each default gave a right of action, and might be sued upon at any time, the purpose of the Legislature would be lost sight of, and the act be perverted and made punitive instead of remedial. The common law forbids the infliction of penalties or punishment more than once on the same offender, although guilty of several distinct offenses. By that law, and it was so construed in this State, a conviction, judgment and execution for a felony not capital were a bar to all other indictments for felonies not capital committed previously: *Crenshaw* v. *State*, M. & Y., 123; 1 Bish. Cr. Law, sec. 1070. And the courts have been always opposed to the enforcement of penalties except to the extent necessary to secure the manifest object of their infliction. For this reason, as we have seen, they are agreed in construing penal statutes strictly.

The act before us gives the forfeiture upon the failure of any railroad company to comply with its provisions "during any trip of the passenger cars." Under the rules of construction adopted by the courts, there would be only one penalty for each trip. The

statute does not in so many words give the right of action to a common informer, and the argument is strongly persuasive, especially in view of the amount of the penalty, that the right of action is given only to a passenger aggrieved by the default. But if it be conceded that a *qui tam* action might be brought by any one, the statute does not say that there shall be a penalty for "each and every offense." In the absence of these words, it seems to be settled that only one recovery can be had for acts or omissions, in violation of the statute, prior to the commencement of the suit: 5 Wait's Act. and Def., 164. The reason is, that it is the action which will bring the default to the attention of the corporation or party, and secure a compliance with the law. And it is the performance of the duties imposed which enures to the benefit of the passengers, on whose behalf the act was passed. A different construction would contravene the legislative intent, leave an opening for the perversion of the act, and make a statute punitive which was intended to be remedial.

Accordingly, under a statute giving a penalty against any person employing another to act as a pilot who has no license, it was held that there could be only one recovery against the defendant, although he had employed an unlicensed pilot for several ships: *Sturgis* v. *Spofford*, 45 N. Y., 446. The same ruling was made, where a penalty of $50 was given against any railroad company for taking more than a fixed rate of fare: *Fisher* v. *New York Central Railroad Company*, 46 N. Y., 544. "The omission from the statute

of the words 'for each and every offense,'" say the court in that case, "shows clearly that the Legislature did not intend to open the door to a practice adopted in a case originating in another part of the State, now under advisement in this court, of opening a book account of penalties accrued, and delaying suit for a year, when such penalties amounted to between twenty and thirty thousand dollars. A construction permitting this would defeat the intention of the Legislature, which was to suppress the extortion by prompt prosecution, by enabling parties to forbear suing until the aggregate penalties amounted to a large sum, and induce others to do as one of the plaintiffs in one of the cases now in judgment was honest enough to testify he did; that was, to abandon other business, and spend his time for a considerable period in riding back and forth from Tonawonda to Buffalo for the purpose of earning penalties."

The plaintiff in this suit has brought before us precisely the case presented to the court of Errors and Appeals of New York under a similar statute. The decision of that eminent tribunal commends itself to our judgment and sense of justice. To allow a person to open a book account of penalties at an insignificant way station, and run up a charge of $24,000 for the failure of the conductor to announce the station, or the length of stay, of which no passenger has complained, would shock the conscience, pervert the intention of the Legislature, and turn a remedial into a highly punitive statute. It would be a literal construction of the words of the statute, which would

recall the similar construction by a somewhat famous judicial tribunal of the middle ages of a law making it a capital offense to shed blood in the street, whereby an unfortunate leech was condemned to the gallows for bleeding his apoplectic patient on the side walk where he had dropped down. If the Legislature had, in the act before us, in so many words authorized what the plaintiff has done, without any notice to the company, it would be difficult to sustain the constitutionality of the statute. For the effect would be the imposition of an excessive fine: Const., Art. 1, sec. 16. But the Legislature had no such intention, and we shall not press the language used so as to do indirectly what could not, perhaps, have been done directly. The statute, both upon reason and authority, admits of a different construction. We are of opinion, therefore, that only one penalty can be recovered up to the bringing of the suit.

The causes of demurrer assigned, strictly speaking, do not cover the grounds of our decision. But the statute which requires that demurrers shall state the objection relied on applies equally to cases at law and in equity: Code, sec. 2934; *Kirkman* v. *Snodgrass*, 3 Head, 370. And we have uniformly held that when a bill contains no equity, it may be dismissed although the causes of demurrer assigned may not cover the real defects: *Lane* v. *Farmer*, 11 Lea, 568, 577. We have also held that although the demurrer be insufficient because bad in part, yet upon an appeal from the ruling of the court on the demurrer the court would determine a question involved in the suit which

would greatly narrow the contest, and tend to the speedier termination of the litigation: *Riddle* v. *Motley*, 1 Lea, 468. These rules equally apply to an action at law, the statutes regulating the demurrer and the appeal being the same.

The exceptions to the report of the Referees will be sustained, the judgment of the court below reversed, and the cause remanded for a repleader with leave to the defendant to move to strike out all the counts of the declaration except one to be selected by the plaintiff, and with directions to the circuit court to proceed in accordance with. this opinion by striking out the other counts. The defendant will pay the costs of this court.

TURNEY, J., delivered the following opinion:

This action involves a construction of three consecutive sections of the act of 1865–6, ch. 15, brought into the Code by section 4927 *a*, *b*, *c*, as follows:

"It shall be the duty of each conductor or other employee on any railroad in this State to announce, in loud, distinct words, for each passenger car, the stopping place, station or depot, or town at which each passenger train stops, or shall be detained for any purpose, and also the time such car or passenger train will stop or be detained."

"Every railroad company shall cause such passenger car to be well supplied with pure and wholesome water, and in cool weather have each passenger car provided with comfortable fires, and at night furnished

with sufficient light for the use, comfort and convenience of the passengers.

"Upon the failure of the railroad company, during any trip of the passenger cars, to comply strictly with any of the provisions of the two preceding sections of this Act, then such railroad company shall forfeit and pay the sum of one hundred dollars, recoverable before any court having jurisdiction thereof, one-half to be paid to the person suing, the other half to the common school fund of the State."

To correctly get at and understand the object of the Legislature, it is necessary to keep in mind the wording of this statute as connected provisions throughout. It applies alone to *"passenger trains."* It contemplates the convenience and comfort of passengers only. The object of calling the names of depots, stations, etc., can reasonably have the two objects, one to keep the passenger advised of the fact that his destination has been reached, the other to inform strangers of the points on the roads, with perhaps the additional purpose of advising passengers whether they will have time to leave the cars and return for a continuation of the trip. Persons not passengers, and not desiring to be so, can have no interest in the performance of or the failure to perform the duties defined. Taking the entire law, and construing it as a whole, I entertain no doubt of the correctness of this construction. Would any one suppose the Legislature had any intention to provide for the comfort, thirst or warmth of one who might be loitering about depots, or that it designed to furnish

such an one lights at night from the lamps of the train?

The term *"the person,"* employed in the third section, relates to the passengers, and means the passenger suing. While I think the Legislature possessed the power under the Constitution to pass the law, I also think that it must be so construed as to be confined to its effects upon passengers, or those who propose to be such in good faith, and for the purpose of going from point to point along the line of the particular road as travelers, and not to include such as travel solely for the purpose of speculation or profit to be derived from eavesdropping or playing the parts of spies or detectives; and that therefore the party suing must show that he was or intended to be such passenger, and was not traveling for the disreputable purposes indicated, and did not enter the train with a view to them.

The declaration should aver that the person suing was a passenger, or purposed to be one at the time and place of omission.

COOKE, Sp. J., concurs in this opinion.

FREEMAN, J., delivered the following dissenting opinion:

This action is brought by plaintiff to recover penalties imposed by act of 1865–6, for failure of the conductor or other employee of the company to announce, on its passenger trains, at the Paducah junc-

tion, a stopping place of said road, the station, and the time the train would stop, or be detained. The declaration contained 240 counts, each for a distinct failure of duty. The defendant demurred to the declaration, and stated two grounds of demurrer: First, that the penalty sued for was unconstitutional; and second, that the person upon whom the duty is imposed by the law can alone be held responsible for its non-performance—a corporation aggregate being incapable of incurring the penalty or being sued therefor. The demurrer was sustained by the circuit judge, and the defendant appealed.

The Act of 1865 is one of a series of acts of our Legislature passed under the police power to regulate the conduct of railroads, for the safety, convenience and comfort of the traveling public.

The first section requires persons who sell tickets to passengers at any station to open their offices an hour before the time of departure of trains, and for failure to comply with this requirement the delinquent is subjected to indictment or presentment, and on conviction is to be fined not less than twenty nor more than fifty dollars.

Sec. 2, Code, sec. 4927*b* is: "It shall be the duty of each conductor, or other employee on any railroad in this State, to announce in loud and distinct words, for each passenger car, the stopping place, station or depot or town at which each car or passenger train stops, or shall be detained for any purpose, and also the time such car or passenger train will stop or be detained."

The next provision is one regulating the fires, water and lights at night on said cars.

The next section, 4927*d*, is: "Upon failure of any railroad company, during any trip of the passenger cars, to comply strictly with any of the provisions of the two preceding sections of this act, then such railroad company shall forfeit and pay the sum of one hundred dollars, recoverable before any court having jurisdiction thereof, one-half to be paid to the person suing, and the other half to go to the common school fund of the State."

This statute is clearly a command of the Legislature, demanding obedience on the part of the railroad companies, and if within the constitutional competency of that body, it is to be construed and enforced as any other enactment. We must first ascertain its meaning, and then see that it be enforced as enacted. That meaning is to be ascertained from the language used, giving it the fair and natural construction which the words usually have in our language. There is no difficulty in doing this here, as there are no words of doubtful import, all are readily understood.

It is clear these provisions were intended to be penal, that is, the money to be paid on violation, when suit is successfully prosecuted, was intended as a punishment for the breach of the law. It is certain it was not intended to be compensatory in any sense, because an arbitrary amount is fixed for any case, and one-half only goes to the party suing, the other to the common school fund.

What then is the meaning of the provisions of

section 4927 *b ?* It requires, in plain terms, that the conductor or other employee of the road, shall announce, as required, for each passenger car, the stopping place, station or depot at which each car or passenger train stops, or shall be detained for any purpose, and the time such train will stop. This is too plain to be misunderstood. Whenever a train stops at a station, depot or town, this announcement must be made, or the statute is not obeyed. It is violated by any failure. Such violation may take place at any station on a trip from one point of departure to the destination of the train where the train may stop. Ordinarily it can only occur on the same trip but once at the same station, as the train can only pass that place once on a trip. The language of the section imposing the penalty is: "Upon failure of any railroad company during *any* trip of the passenger cars to comply strictly with *any* of the provisions of the preceding sections, then the company shall *forfeit* and pay the sum of one hundred dollars, recoverable before any court having jurisdiction thereof, one-half to be paid to the person suing, and the other half to go to common school fund."

What is the requirement that must be strictly complied with? The conductor or other employee on any railroad, *is to announce in loud and distinct words, for each passenger car, the stopping place, station, or depot or town*, at which each car or passenger train stops, or shall be detained for any purpose, and also the time such car or passenger train will stop or be detained.

Parks *v.* Railroad Company.

This duty is so plainly written there can be no misunderstanding it, that the announcement must be made of "the stopping place, station, or depot or town at which *each* car or *passenger* train stops." Whenever a place, station, depot or town is stopped at by a car or passenger train the duty must be performed. To comply with this law at any station where such stoppage takes place the announcement must be made. This is too clear for argument. Suppose, for instance, on any trip from one point to another, at one half the stations or stopping places the announcement is made, the other half not, it cannot be doubted that the law has been complied with half the time, and the other half has been violated—if six stations, the law will have been complied with three times, no one can doubt—but it is equally certain at the other three stations has not been obeyed; compliance and non-compliance are precisely the opposites each of the other—what, if done, is compliance, if omitted, is non-compliance.

When is the penalty or forfeiture incurred? is the next question. The language of this statute must be taken in its ordinary and well-understood meaning, and when this is seen, it must be held to be the intention of the Legislature, and so enforced. If this be not the rule then the Legislature may say one thing, and the courts say another, and the citizen could never know what he must do or avoid until the courts have said what it means.

The language is, and the mandate is unmistakable, " upon failure to comply strictly with *any* provision

of the two preceding sections, (the other not being before us, the one quoted being alone involved), *then* such railroad company shall forfeit and pay the sum of one hundred dollars, and that on any trip. This is as plain as the other. It is the moment there is a failure to comply strictly the forfeiture is incurred— *then* the right accrues to some one to sue. There can be no doubt of this proposition.

Now suppose a failure at the three first stations on a trip—at the first a passenger stops supposing the train will remain fifteen minutes, but it leaves in five, and he is left. He immediately sues the company before a justice of the peace, and so on at each station the same thing occurs—what shall be the measure of recovery? Can each recover the hundred dollars? If so, why? Because the forfeiture of that sum had been incurred the moment the act is not complied with. It is impossible to avoid this result unless you hold that the first man that sues is to recover one hundred dollars, and this shall cover all subsequent violations. If this rule be adopted, then how far shall it reach, and what length of time shall it cover?

If, however, all three can recover, that is, each for a single completed act, then we are compelled to say the company has violated the law three times, each failure a violation, when sued for the act by different individuals at different times, and as any man can sue for the penalty, on the view of two of the judges, my brothers Cooper and the Chief Justice, why one man may not recover on different causes of action

Parks *v.* Railroad Company.

·complete of themselves, as well as a dozen separate individuals, is what I am unable to see, even should he be required to sue in separate actions. A man has six different notes due for one hundred dollars each. If he assigns them to six different men, each may sue on the note he has, because it is a complete cause of action. But the theory of my brother Cooper, if applied to such a case, would hold that if he sued himself he could only recover on one note, and the others be for nothing held. I know my brethren would not hold this, but the logic of the opinion involves it, or else you must show an element differentiating the case before us from the one supposed. None can fairly be shown, as I think. The note is but an obligation to pay, say one hundred dollars, and gives a completed right to that sum in the holder, because the *law* will enforce it, and gives the right of recovery on it. The same is the case here, the law gives the right to recover one hundred dollars for each failure to comply with the statute. It is to be recovered as penalties are recovered by the old action of debt at common law, with us in both cases, on the statement and proof of the facts of the case, showing the legal right.

Let us look for a moment at the principle held by the opinion of my brethren Cooper and Deaderick, as given in the syllabus of his opinion, drawn by Judge Cooper: It is, "under the act of 1865, (Rev. Code, sec. 4927 *b, c* and *d*), which makes a railroad company liable to forfeit and pay a penalty of $100 upon a failure of the company, during any one trip

of the passenger cars, to announce the stopping place or station at which the train stops, only one penalty can be recovered up to the time of bringing the suit." That is to say, only one penalty can be recovered for two hundred and forty failures, as in this case. But in this case the judgment is that he may recover one hundred dollars, and may select any one count of his declaration, and recover on that if he prove his case.

I submit that if any plain man should read the statute, and then what is thus held, if he would not be compelled to conclude that in this case the Legislature had enacted one thing and the court another. To test this: if under the common-law doctrine of implied repeals of statute, by approximately enacting a different rule, the Legislature had enacted that for every failure to announce the station where a train stops on a trip the company shall forfeit and pay one hundred dollars to whoever shall sue for the same, and then a subsequent Legislature should enact a law, "*Be it enacted, etc.,*" that hereafter when a railroad company shall fail on any trip to announce the station whenever the train shall stop, that one hundred dollars shall be forfeited, and recovered by whoever may sue, and this shall be for all failures incurred before bringing suit," if the latter statute would not be a repeal of an essential feature of the former? If not, it is because the language of the statute cannot be antagonized or inconsistent with another, as I think. My learned brethren see clearly, no doubt, the grounds of these views, but I am unable to make consistency with the statute out of these.

Parks *v.* Railroad Company.

The logical result of this opinion is, that a hundred violations of the requirement of the statute, or rather two hundred and forty, as in this case, only incurs one penalty, where one man sues for the failure to comply with the statute. Concede that as now settled, and I ask, how will it be if two hundred and forty men should each sue in separate cases? Again, how is it that one case of violation to be selected by plaintiff, and he recover for that. Is that one violation any more heinous than the other two hundred and thirty-nine? If so, why and how? Shall one violation give a penalty of one hundred dollars, and two hundred and forty no more?

But the result of that opinion goes even further necessarily, for it involves, and .it cannot be avoided or evaded, the proposition that these separate violations may occur, and did in this case necessarily occur, on separate trips of the trains, for the train could only pass and stop once on each trip, or on a single trip, and so we have the statute practically to mean that the railroad companies may violate the statute every day in the year, or even for five years, for if two hundred and forty times incurs but one penalty, a thousand would incur no more, and yet pay only one hundred dollars, certainly in the case where one man shall sue for the violations, or how it would be if a man should sue in each case, I am not able to say, and think my brethren will find it difficult to tell. One violation incurs the same penalty as two hundred and forty, and of necessity it follows a thousand would give the same result. The result is, as I think, the

statute is, practically repealed.    It might be interest-
ing to settle the question suggested as to what would
be the result if a separate person should sue for each
violation or failure to comply with the law.    As to
the New York cases cited, I have but to say that
the case of *Fisher* v. *New York Central Railroad,* 46
N. Y., 644–8, I have examined, and I see no simi-
larity in the two statutes, nor objects and purposes.
The opinion of the court in that case, as expressed
in the reasoning of the judge on such a case as is
now under consideration, sustains precisely the views
I have maintained, for which numerous cases are cited.
The statute involved was held to be a remedy given
to encourage parties to sue who had been compelled
to pay over fare, and the fifty dollars compensation
to encourage suit for this purpose.    No such feature
is found in this statute, no such purpose to be sub-
served.

I have only to say, that with proper deference and
respect for the courts of a sister State, they are no
authority when I am called on to construe an act of
my own State Legislature, if they require me to dis-
regard the plain language of that body.    If any thing
in the cases cited does sustain the view combatted, (as
I do not think they do when taken in connection
with the cases then under consideration) they are sim-
ply unsound; my judgment does not approve, and I
am compelled to stand by my own opinion.    The
consideration that I have felt of most weight in this
case is, that so far as the plaintiff is concerned there
is no merit in it, and a large recovery would be had

Parks *v.* Railroad Company.

on my view of the law. But the answer is, that there is no merit in the same sense in any case where a common informer sues, as in all cases of a *qui tam* action. But this consideration loses all its force when we remember that no penalty can ever be recovered if the law has not been violated. The violation is the act of the defendant, and why a railroad corporation shall violate a plain law, and then not pay the penalty imposed by law, and to the party the law gives that penalty, I do not · see. If the party fails to prove a' violation, he will pay costs and attorney's fees for his pains. If he proves the violation, then the recovery is legally due, and I will give it. If the statute is not a good one let the Legislature change or repeal it. But until then it must be enforced, or the law of the land is trampled under foot. I cannot assent to such a result—whether the amount be great or small—nor does this affect the proper legal result the weight of a feather. I but add, that I am equally clear that the demurrer does not raise the question on which the court has acted, and that we ought not to have decided any thing except what the court below had ruled on.

A word only as to the view maintained by Judges Turney and Cooke. It is, as I understand it, that the penalty is given for the benefit of the passengers on the cars alone—certainly that none but a passenger can sue. This must go on the idea that the passenger who is inconvenienced by the failure to comply with the regulations required by the statute, is wronged, and has his remedy to redress this wrong. But it is

also held that only one can sue, and not every passenger, or every one injured. The last would have led to consequences that could not be justified—that is, if any passenger could sue. It might be worse than the present case on the companies. This view seems to me not sustained either on principle or from the language of the statute. The language is, the company failing to comply "strictly with the provisions," shall forfeit and pay the sum of one hundred dollars, recoverable before any court having jurisdiction thereof, one-half to be paid to the person suing, and the other half to go to the common school fund of the State." How this language is to be limited so that only a passenger can sue, I am unable to see. The statute is either a penal one, or is intended to be compensatory to passengers injured. If penal, then it would be a requirement, as I think, never heard of before in such a statute, that only a passenger on the train should be entitled to enforce it. They generally would be the persons least likely ever to do so of all others, as such passenger would not probably live at or desire to remain at the station long enough to prosecute such a suit.

But if it be compensatory, which, I take it, is the view underlying the opinion—then, on what principle it can be given to only one man is beyond my ken to see. Who shall it be? The first man that sues? It may be he is the man not injured in the slightest. The station may be his home, and he ready to step out without notice. But why the first man that sues shall be alone entitled to compensation for

Parks *v.* Railroad Company.

a wrong equally affecting all the other passengers desiring to stop at that station, it would be difficult to see. Why the compensation should be just one hundred dollars, one-half to the first man that sues, and the other to the common-school fund, is still more difficult to see. The "common-school fund," I take it, is not likely to be injured by any failure to comply with the requirements of the statute—why give compensation to it? It is not a *passenger.*

I only add, that it is obvious the views of the two opinions are entirely antagonistic to each other. The one holds the statute penal, the other compensatory. If the first be correct, the difficulty is, why confine the right to sue to a passenger? If the latter, then why to the first man that sues, and give half the recovery to the "common-school fund" that is entitled to no compensation, and then only allow compensation to one man, while others equally injured go uncompensated?

For these reasons I am compelled to dissent from both views.