the demijohn inclosed in a champagne box. The delivery of the goods by the carrier in a damaged condition raised the presumption that the damage was done by the carrier's act or default. "Where the accident is one which, in the ordinary course of events, would not have happened but for want of proper care on the part of the defendant, it is incumbent upon him to show that he had taken such precautions as prudence would dictate, and his failure to furnish the proof, where, if it existed, it would be within his power, may subject him to the inference that such precautions were omitted." J. Russell Manuf'g Co. v. New Haven Steamboat Co., 50 N. Y. 121.

But, under the provision of the shipping receipt above mentioned, there was a question of proper packing of the goods for transportation. Upon that point a witness for the defendant testified that the demijohn was not packed in the usual way that demijohns are put up; that it was not in a demijohn box, but a wine case, an ordinary claret case, not suitable for a demijohn. The plaintiff's witness admitted that there was a regular form of demijohn box, but claimed that it was not as safe as packed in a champagne box. The justice was called upon to decide the question of proper packing, and, upon the testimony, his judgment cannot be disturbed. A champagne case or claret case is intended to hold bottles of wine, and might be safely handled in a manner which would not be prudent if the contents of the box, instead of being wine in one or two dozen bottles, were simply a two gallon demijohn, which might be broken by being placed or carried upside down, the whole weight resting upon the neck, and subjected, when so carried, to a jar sufficient to break it, although too slight to injure bottles of wine as ordinarily packed. As there was nothing to indicate to defendant the unusual nature of the contents of this wine case, so as to prevent its being subjected to unnecessary risks, it was, under the circumstances, a question for the justice whether the goods had been properly packed for shipment. We are not warranted in holding that his decision was against the weight of evidence.

Judgment affirmed, with costs. All concur.

---

(20 Misc. Rep. 695.)

### STEWART v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Term. July 1, 1897.)

CARRIERS—EXACTION OF ILLEGAL FARE.
Plaintiff boarded a car on defendant's street railway, and paid his fare. Before reaching the point to which plaintiff wished to go, the car stopped, and the conductor directed plaintiff to take the next car, as the one he was on went no further. Plaintiff boarded the next car while the conductor was inside, and, upon his returning to the platform, he demanded fare from the plaintiff, and, upon plaintiff's refusal to pay it, put him off the car. *Held*, that this was not an attempt to exact more than the legal fare, within the meaning of section 39 of article 2 of the general railroad act, and gave the plaintiff no right of action for the penalty therein provided.

Appeal from First district court.

Action by John A. Stewart against the Metropolitan Street-Railway Company.   From a judgment for plaintiff, defendant appeals.   Reversed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Henry A. Robinson (J. T. Little and Theo. H. Lord, of counsel), for appellant.

A. & C. Steckler (Willard H. Olmstead, of counsel), for respondent.

McADAM, J.   .The facts as claimed by the plaintiff are as follows: He boarded a cable car of the defendant in front of the Fifth Avenue Hotel, in order to reach a point near Park Row.   When the car reached Houston street, it stopped, and the conductor informed him that he would have to get out, and take the next car, as the one he was on did not go any further.   The plaintiff got out, waited three or four minutes for an approaching car, and boarded it while it was in motion, and when the conductor was inside.   The conductor, coming out to the rear of the car, demanded fare, and was informed by the plaintiff that he had paid his fare to the conductor of the first car. The conductor insisted, however; and at Spring street, two blocks below the place where the plaintiff boarded the second car, the latter was refused further passage unless he paid his fare.   Thereupon the plaintiff left the car, took the next car down town, and paid his fare upon it when demanded, without any objection.

If the plaintiff boarded the second car by direction of the conductor of the first one in order to complete the passage to his place of destination, and was compelled to leave the second car upon refusal to pay an additional fare, a case for the recovery of damages for breach of contract would seem to be made out, and he would be entitled to compensation for his loss of time, the additional fare paid, and the injury to his feelings.   Hamilton v. Railroad Co., 53 N. Y. 25.   That is not the remedy the plaintiff pursued.   Instead of suing for breach of contract, the plaintiff brings this action to recover the penalty imposed by the general railroad act for a charge in excess of the legal fare.   The act (article 2, § 39) · is as follows:

"Any railroad corporation which shall ask or receive more than the lawful rate of fare, unless such overcharge was made through inadvertence or mistake, not amounting to gross negligence, shall forfeit fifty dollars, to be recovered with the excess so received by the party paying the same; but no action can be maintained therefor, unless commenced within one year after the cause of action accrued."

It is quite manifest that the statute was intended, not to afford a remedy for breach of contract, but to punish an attempt to exact more than the legal fare from passengers in railroad cars or trains, and that it cannot be extended to cover the case of an attempt to collect what is supposed by the conductor to be the one fare, which he is required to receive from a passenger.   If the conductor who had first collected the plaintiff's fare attempted in the same car to collect it again, under the impression that it had not been paid, the case would not be within the statute, because it would not be an attempt at overcharge, but the result of inadvertence or mistake, which is expressly excepted by the statute invoked.   The result is the same undoubtedly where

the conductor of the car to which the plaintiff has been transferred attempts to collect the same fare, in ignorance of the passenger's right to continue his ride. In such case there is no attempt to make an illegal charge or exaction. The action is therefore misconceived.

The object of the statute is well expressed in the opinion of Judge Grover in Fisher v. Railroad Co., 46 N. Y. 644, at page 657:

"Until 1855, so far as I am aware, no statute had been passed upon this sub-ject. Experience had shown that railroad corporations were charging fares beyond the rate allowed by law; that these charges were very small in each particular case, but, aggregated for a year, amounted to a sum sufficient to continue the practice. The sums so extorted were always small in any one case, usually but a few cents, sometimes shillings, and the trouble and expense of prosecuting for their recovery in justices' courts were more than the amount received from any one person. Thus, the illegal practice was continued with impunity. To remedy this, the statute was passed giving the fifty dollars to the party paying the money, not as a satisfaction for the injury received, for that was otherwise compensated, but to enable him to prosecute in a court of record, when he could recover the compensation of his attorney as costs, and to compensate for any further expenses that might be incurred in the suit, and to compel the payment of such a sum by the defendant as would effectually stop the practice."

The statute is penal in its nature, and cannot be extended to cases not within the legislative intent or the evil intended to be remedied. Vail v. Railroad Co., 147 N. Y. 381, 42 N. E. 4.

The plaintiff has undoubtedly mistaken his remedy. The judgment rendered in his favor for the statutory penalty must therefore be reversed, and, as a new trial would not avail him, there must be judgment absolute in favor of the defendant, with costs. All concur.